593 P.2d 688

**Gilbert ROSALES and Lupe Rosales, husband and wife, Plaintiffs-Appellees**

v.

**CITY OF ELOY, a Municipal Corporation, and Wes Mauldin, Chief of Police of the City of Eloy, Defendants-Appellants.**

No. 2 CA-CIV 3041.

Court of Appeals of Arizona, Division 2.

Feb. 16, 1979.

Rehearing Denied March 28, 1979.

Review Denied April 17, 1979.

Stanfield, McCarville, Coxon, Cole & Fitzgibbons by David A. Fitzgibbons, Casa Grande, for plaintiffs-appellees.

Lesher, Kimble & Rucker, P. C. by Michael J. Gothreau, Tucson, for defendants-appellants.

## OPINION

HOWARD, Judge.

A jury awarded the Rosales' $75,000 based on conduct and statements by appellants during an investigation of Gilbert Rosales, a member of the City of Eloy Police Department. Appellants contend the trial court erred in allowing the appellees to amend their complaint during the trial and in denying their motion for a directed verdict. We need not discuss the first issue since we believe the trial court erred in not directing a verdict.

In 1976, Wes Mauldin was the Chief of Police of the City of Eloy. Gilbert Rosales was a sergeant on the police force. As a result of information which he had in his possession concerning Rosales, Mauldin contacted the Arizona Department of Public Safety. It was agreed that a member of the Department of Public Safety would come to Eloy with some marked money and pose as a drunk. Rosales would then be called to arrest the "drunk" and transport him to the police station.

On September 28, 1976 DPS Agent Clark, posing as the "drunk", was arrested by Rosales and taken to the jail. Clark's possessions, including the marked money, were taken from him at the booking desk by Rosales with the assistance of a Pima County deputy sheriff and he was then placed in a cell. As soon as Mauldin and three other law enforcement officers saw Rosales depart from the jail they entered. After ascertaining that Clark had been booked they spoke to Rosales who had re-entered the jail. They told him that he had arrested a DPS agent. It was then discovered that $80 of the marked money was missing. Mauldin called Rosales into his office and in the presence of the other officers Rosales was informed that some of Clark's money was missing and that they suspected him of having taken it. Rosales was asked to remove his clothing so that he could be searched. He removed some of his clothing, but refused to allow his boots to be searched. Mauldin then orally suspended him and Rosales was allowed to go home.

The next day Rosales was served with a letter of suspension. On October 4, he was given written notice of termination of employment by the City of Eloy. He was subsequently reinstated and then voluntarily resigned on November 16, 1976.

Two articles appeared in the local newspaper, The Eloy Enterprise, concerning the incident, and on October 11 Mauldin sent a "notice of termination" to the Arizona Law Enforcement Officers Advisory Council wherein he stated that Rosales had been terminated as a police officer. One of the reasons given for termination was that Officer Rosales allegedly "rolled" an undercover DPS officer.

■ The case was submitted to the jury on three theories: (1) libel and slander, (2) invasion of the right of privacy and (3) intentional infliction of mental distress. We agree with appellants that Gilbert Rosales, as a police officer, was a "public official" under the law governing libel and

slander. See *Starr v. Beckley Newspapers Corporation*, 201 S.E.2d 911 (W.Va.1974) and cases cited therein. Therefore, it was necessary for appellees to show that Mauldin and the mayor, who informed the newspaper of the incident, knew that the accusations were false and that they were defamatory or that Mauldin and the mayor acted in reckless disregard of these matters. *Sewell v. Brookbank*, 119 Ariz. 422, 581 P.2d 267 (App.1978).

■ Appellees assert that proof of actual malice as defined in *Sewell v. Brookbank*, supra, can be found in the fact that Mauldin and the mayor told the newspaper publisher that "charges" had been placed against Rosales, when in truth and in fact Rosales had not been charged with committing a crime and the matter was still under investigation. Appellees also point out that in his letter of October 11, 1976, Mauldin did not inform the Arizona Law Enforcement Officers Advisory Council that no "charges" had been filed. The basic premise of appellees' argument is that the word "charges" means "the filing of criminal charges" and, since none had been filed, the statements were untrue and were known by Mauldin and the mayor to be untrue. We do not agree with this premise. The word "charges" also denotes "accusations" or "allegations" and does not necessarily mean the filing of criminal charges. Therefore, neither the statements to the newspaper nor the letter to the Council can form the basis of actual malice. There being no evidence of actual malice, the trial court erred in allowing the case to go to the jury on the claim for libel and slander.

■ With respect to the tort of invasion of the right of privacy, as with libel and slander of a public official, there can be no recovery absent proof of actual malice. *Rawlins v. Hutchinson Publishing Company*, 218 Kan. 295, 543 P.2d 988 (1975). Therefore, the trial court erred in allowing this claim to go to the jury. See *Sewell v. Brookbank*, supra.

■■ There remains the claim for intentional infliction of emotional distress. The essential element of this tort is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Hixon v. State Compensation Fund*, 115 Ariz. 392, 565 P.2d 898 (App.1977). We can find no such conduct here. The trial court should not have submitted this claim.

The judgment is reversed and the trial court is instructed to enter judgment in favor of appellants.

RICHMOND, C. J., and HATHAWAY, J., concurring.